**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MONTICELLO MN MHC, LLC,

                                        Civil No. 23-1559 (JRT/DJF)
                        Plaintiff,

v.

                                        **MEMORANDUM OPINION AND ORDER**
KJELLBERG'S INC.,                       **DENYING IN PART AND GRANTING IN**
                                        **PART PLAINTIFF'S MOTION FOR**
                        Defendant.      **SUMMARY JUDGMENT**

---

Kyle R. Kroll, Michael Anthony Gale-Butto, and Thomas H. Boyd, **WINTHROP & WEINSTINE, P.A.**, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, for Plaintiff.

Chad A. Staul and Elle M. Lannon, **QUINLIVAN & HUGHES, PA**, PO Box 1008, 1740 West Saint Germain Street, Saint Cloud, MN 56302, for Defendant.

Plaintiff Monticello MN MHC, LLC ("MHC") agreed to purchase a mobile home park from Defendant Kjellberg's Inc. ("Kjellberg") for roughly $23 million. As part of the agreement, Kjellberg put an additional $1 million in an escrow account in the event that the sewer expenses for the park increased after MHC took ownership. Each party claims a right to that $1 million. Because determination of the contractual terms requires factual development, summary judgment is inappropriate. However, the ancillary disputes—namely Kjellberg's counterclaims I and II—fail as a matter of law. Accordingly, the Court will grant in part and deny in part MHC's motion for summary judgment, allowing MHC's

breach of contract claim and both declaratory judgment claims to proceed. The Court will dismiss Kjellberg's remaining claims with prejudice.

## BACKGROUND

### I.   FACTS

In August 2020, MHC's predecessor Lakeshore Communities, Inc.[1] agreed to purchase a mobile home park from Kjellberg. (Compl. ¶¶ 14–15, Ex. A ("Purchase Agreement"), May 26, 2023, Docket No. 1.) The parties amended the Purchase Agreement in October of the same year after MHC discovered what it describes as illegal submetering and billing that inflated the property's value. (*Id.* ¶ 16, Ex. B ("Am. Agreement"); Pl.'s Mem. Supp. Mot. Summ. J. at 1–2, Aug. 31, 2023, Docket No. 22.) MHC elaborates that it believed Kjellberg was charging residents for water and sewer when it should have been paying for those costs itself. (Pl.'s Mem. at 3.)

The Amended Agreement created an escrow account with $1 million that would be released to either the seller, Kjellberg, or the purchaser, MHC, after an evaluation of the sewage expenses for 2021 and 2022. (Compl. ¶¶ 17, 20–26.) The sewer costs did increase. (Decl. Chris Speer ("Speer Decl.") ¶ 5, Ex. A ("Sewer Invoices"), Aug. 31, 2023, Docket No. 23.) MHC demanded release of all the escrow funds based on a Sewer Reconciliation of 2022 and a calculation of the Cap Rate Price Adjustment, which it claims

---

[1] MHC was assigned all of Lakeshore Communities, Inc.'s rights, title, and interest in the Purchase Agreement and its amendments. (Compl. ¶ 18, May 26, 2023, Docket No. 1.)

totals over $1.2 million.  (*Id.* ¶¶ 9, 15–17; Reply to Countercl. ¶¶ 18, 21, July 21, 2023, Docket No. 17.)

With its demand, MHC provided all the Sewer Reconciliations after the entire two-year review period.  (Reply to Countercl. ¶ 18.)  In the course of negotiating whether the escrow funds should be released, MHC provided Kjellberg with all of the Sewer Invoices, maintenance records, and water use reports from the Minnesota Department of Natural Resources.  (*Id.* ¶¶ 18, 21; Def.'s Mem. Opp. Summ. J. at 5–6, Sept. 21, 2023, Docket No. 26.)  Kjellberg has refused to release any escrow funds.  (Speer Decl. ¶ 18.)

MHC filed this action alleging breach of contract and seeking declaratory judgment releasing all the escrow funds.  (Compl. ¶¶ 27–38.)  Kjellberg filed an answer and counterclaims alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking declaratory judgment releasing part or all of the escrow funds.  (Answer & Countercls. at 14–16, ¶¶ 34–46, June 30, 2023, Docket No. 14.)  MHC filed a motion for summary judgment claiming that the contract is unambiguous so the Court may decide as a matter of law that the escrow funds should be released to MHC and Kjellberg's counterclaims should be dismissed with prejudice.  (Pl.'s Mot. Summ. J., Aug. 31, 2023, Docket No. 20.)

## II.   RELEVANT CONTRACT LANGUAGE

The dispute primarily focuses on subdivisions (i) and (iii) of the Amended Agreement.  (Am. Agreement at 3.)  Subdivision (i) directed Kjellberg's to place $1 million in an escrow account, to be paid out to MHC if "the quarterly sewer expense caused to

-3-

be incurred by the usage of the same number or fewer occupied units at Closing exceeds the baseline." (*Id.*)  The parties describe calculating the sewer expense as the Sewer Reconciliation, where "the amount determined to be due" is found by comparing the increased costs to the baseline expenses. (*Id.*)  The parties accounted for the baseline expenses to be prorated based on any increased occupancy of the property to ensure an apples-to-apples comparison of "sewer expenses." (*Id.*)  The Sewer Reconciliation was to be made on a quarterly basis, with "the actual sewer invoices issued by City of Monticello and used for the Sewer Reconciliation" made available to Kjellberg. (*Id.*)  If the Sewer Reconciliation in 2022 was greater than the baseline comparison, MHC would also be entitled to a 4% Cap Rate Price Adjustment disbursement. (*Id.*)

Subdivision (iii) allowed Kjellberg to request "detailed documentation" supporting each quarterly Sewer Reconciliation within ten days of the Sewer Reconciliation being "delivered" to Kjellberg. (*Id.*)  If Kjellberg did not object within five days of delivery of the Sewer Reconciliation or supporting documentation, the Sewer Reconciliation would be presumed valid. (*Id.*)

Finally, section 6(d) of the Purchase Agreement waived any "punitive, incidental, consequential, special or indirect damages." (Purchase Agreement at 7.)

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

## II.    BREACH OF CONTRACT

Both parties bring a breach of contract claim.  MHC alleges Kjellberg breached when it failed to release the escrow funds.  Kjellberg alleges a breach because MHC failed to provide Sewer Reconciliations on a quarterly basis.  The parties agree that Minnesota Law applies to the Purchase Agreement and Amended Agreement.

When determining whether a contract is unambiguous, courts "must give the contract language its plain and ordinary meaning."  *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995).  Whether a contract is ambiguous is a question of law for the Court to decide.  *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339,

346 (Minn. 2003).  "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation."  *Winthrop Res. Corp. v. Sabert Corp.*, 567 F. Supp. 2d 1084, 1091 (D. Minn. 2008) (citing *Art Goebel, Inc. v. N. Suburb. Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997)).  Ambiguity does not exist simply because the parties may disagree as to the proper interpretation of a contract's language.  *Esanbock v. Weyerhaeuser Co.*, 367 F. Supp. 3d 925, 937 (D. Minn. 2019).  The interpretation of an ambiguous term is a factual question.  *See Denelsbeck*, 666 N.W.2d at 346.

### A.    MHC's Breach of Contract Claim

MHC's breach of contract claim centers around the interpretation of "sewer expenses."  It alleges that because the actual invoices from the City of Monticello serve as the basis for calculating sewer expenses, and the invoiced amounts increased, simple mathematical calculations show its entitlement to the escrow funds.  Kjellberg presents three competing interpretations, only one of which is a reasonable alternative.

Kjellberg's first two arguments are that sewer expenses should be broken down on a per unit basis, or at least exclude parkwide expenses.  These interpretations of sewer expenses are not reasonable, and the Court will reject them.  The inclusion of units in the Amended Agreement unambiguously allows the parties to prorate the calculations should the overall number of occupied units change, which did not happen.

Kjellberg's third argument convinces the Court that there are two reasonable interpretations of sewer expenses.  Without question, the goal of the escrow account was to make up for increased cost due to Kjellberg's allegedly illegal billing activity.  It is also

undisputed that the city invoices reflected an increase in billing amounts.  However, what remains unclear is exactly what amount gets disbursed from the escrow account and to whom.  It is possible, and even likely, that the sewer expenses are taken directly from the city invoices and applied to the mathematical formula in subsection (i) of the Amended Agreement.  However, it is also reasonable that the terms "usage" and "amount determined to be due" modify the sewer expenses such that the city invoices require more scrutiny.

The term usage carries with it a connotation that other expenses would be excluded.  This interpretation is supported by the original purpose for the escrow account.  According to MHC, Kjellberg was illegally passing the usage expenses to residents and not paying them itself.  It is reasonable that the parties would only agree to disbursement if, when MHC took ownership and stopped that activity, MHC became responsible for those specific increased usage costs not other unrelated increases, such as those allegedly due to MHC's failure to adequately maintain the property.

The Amended Agreement also includes a specific section describing dispute resolution.  Although the specific resolution process is undefined, subsection (iii) allows Kjellberg to review detailed documentation and supporting evidence in its decision to dispute the amounts.  Further, subsection (i) specifically describes the Sewer Reconciliation as the sewer expenses "determined to be due," not the amount listed on the invoices, indicating that there may be a difference between those two amounts.

The Court finds the term sewer expenses susceptible to two reasonable interpretations, making it ambiguous.  Until the interpretation of sewer expenses is determined, neither party is entitled to declaratory judgment so the Court will allow those claims to proceed.  MHC may still have a breach of contract claim for failure to release escrow funds so the Court will deny its motion for summary judgment but allow that claim to proceed.

### B.    Kjellberg's Breach of Contract Claim

Kjellberg brings one direct breach of contract claim alleging that MHC did not provide the Sewer Reconciliations quarterly.   The language in the Amended Agreement reads, "The Sewer Reconciliation shall be made on a quarterly basis and the actual sewer invoices issued by City of Monticello and used for the Sewer Reconciliation shall be made available to [Kjellberg]."  (Am. Agreement at 3.)  Subsection (iii) requires delivery to Kjellberg.  The parties confirmed for the Court at oral argument that the quarterly Sewer Reconciliations were provided to Kjellberg at the end of the full reconciliation period.

Kjellberg urges the Court to read the Amended Agreement to require MHC have provided the sewer reconciliations quarterly.  That is not what the Amended Agreement says.  Instead, it unambiguously requires that the sewer reconciliations be made quarterly and at some point provided to Kjellberg.  Which MHC did.  As such, the Court will find as a matter of law that MHC did not breach the contract when it provided all the Sewer Reconciliations after the entire reconciliation period and dismiss Kjellberg's counterclaim for breach of contract with prejudice.

III.     **IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Kjellberg alleges breach of the implied covenant of good faith and fair dealing.

Before even reaching the merits of this cause of action, the parties dispute whether it can

be implied in the Purchase Agreement and Amended Agreement.  Every contract contains

an implied covenant of good faith and fair dealing.  *In re Hennepin Cnty. 1986 Recycling*

*Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995).[2]  At the same time, the implied covenant

does not "extend to actions beyond the scope of the underlying contract."  *Id.* at 503.

However, the plaintiff need not first establish a breach of an express contract claim.  *Id.*

at 503.  The claims must just be "based on the underlying agreements."  *Cox v. Mortg.*

*Elec. Registration Sys., Inc.*, 685 F.3d 663, 670 (8th Cir. 2012) (cleaned up).

Kjellberg bases its claim for breach of the implied covenant of good faith and fair

dealing on two different aspects of the Amended Agreement.  First, it relies on its

underlying breach of contract claim for MHC's failure to provide the Sewer Reconciliations

quarterly.  The Court has found that as a matter of law, MHC had no contractual obligation

to provide those reconciliations on a quarterly basis.  Without a contractual duty to

_____

[2] Some Minnesota Court of Appeals opinions have limited the implied covenant further by excluding it from sales contracts.  *Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 n.5 (Minn. Ct. App. 2004).; *Sterling Cap. Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).  The parties disagree about whether the Purchase Agreement and Amended Agreement are sales contracts.  The relevant Court of Appeals decisions never define sales contract.  *Minnwest*, 689 N.W.2d at 303 n.5; *Sterling Cap. Advisors*, 575 N.W.2d at 125. Because the definition of sales contract presents an unresolved question of state law and this claim can be resolved on other grounds, the Court will not wade into that debate.

perform, a claim for breach of the implied covenant of good faith and fair dealing fails. *Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004).

The remaining dispute is whether a claim for breach of the implied covenant of good faith and fair dealing can be based on an inferred duty to maintain the property. It cannot. While the basis need not be an express breach of a contract term, it must remain within the context of the contract. *In re Hennepin Cnty.*, 540 N.W.2d at 503. Here, Kjellberg is asking the Court to infer a duty that is outside the scope of the contract. Nothing suggests MHC had an affirmative duty to maintain the property; instead, the maintenance issue is best evaluated in the determination of sewer expenses. As such, the Court finds this inferred duty to be outside the scope of the Amended Agreement and will dismiss Kjellberg's claim for breach of the implied covenant of good faith and fair dealing with prejudice.

Beyond the fact that Kjellberg's claim for breach of the implied covenant of good faith and fair dealing is not anchored in the underlying contract, Kjellberg's claim suffers from another flaw. The parties agreed to waive any claim for damages outside of direct damages. Direct damages are defined as those that "arise naturally in the usual course of things from the breach itself." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-3103, 2017 WL 1064887, at *3 (D. Minn. Feb. 27, 2017) (quoting *Despatch Oven Co. v. Rauenhorst*, 40 N.W.2d 73, 79 (Minn. 1949)). Courts have further distinguished direct

damages from consequential damages by finding direct damages result from the contract itself and consequential damages result from other contracts or relationships.  *Id.*

Kjellberg does not make any claim for direct damages.  The request for damages that comes the closest to a direct claim is Kjellberg's alleged need to recreate the quarterly Sewer Reconciliations.  However, because MHC had no contractual duty to provide those Sewer Reconciliations on a quarterly basis, MHC did not breach the contract and thus no harm occurred.  The other damages Kjellberg seeks are clearly consequential. Conferring with legal counsel and reviewing rights under the Amended Agreement do not flow directly from any breach but rather are foreseeable additional damages.  As such, Kjellberg's waiver precludes its claim for breach of the implied covenant of good faith and fair dealing and the Court will dismiss this claim with prejudice.

## CONCLUSION

Both parties seek entitlement to the $1 million escrow account.  Without more factual development, the Court cannot issue a decision on where this money should be distributed.  The Court can, however, dispose of Kjellberg's other counterclaims as they fail as a matter of law.  The Court will thus deny MHC's Motion for Summary Judgment in part, allowing MHC's breach of contract and the two declaratory judgment claims to proceed, and grant MHC's Motion in part, dismissing Kjellberg's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing with prejudice.

-11-

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.   Plaintiff's Motion for Summary Judgment [Docket No. 20] is **DENIED in part**

and **GRANTED in part** as follows:

a.   Plaintiff's Motion for Summary Judgment on its Claims I and II is **DENIED**;

b.   Plaintiff's Motion for Summary Judgment to dismiss Defendant's

Counterclaim III [Docket No. 14] is **DENIED**; and

c.   Plaintiff's Motion for Summary Judgment to dismiss Defendant's

Counterclaims I and II [Docket No. 14] is **GRANTED** and Defendant's

Counterclaims I and II are **DISMISSED with prejudice**.


DATED:  April 30, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge